**Slip Op. 10-139**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

———————————————————————— :
                                                      :
THE WATANABE GROUP,                                   :
                                                      :
               Plaintiff                              :
                                                      :
       v.                                             :          Before: Jane A. Restani, Judge
                                                      :
UNITED STATES,                                        :          Court No. 09-00520
                                                      :
               Defendant,                             :
                                                      :
       and                                            :
                                                      :
ASSOCIATION OF AMERICAN                               :
SCHOOL PAPER SUPPLIERS,                               :
                                                      :
               Intervenor-Defendant.                  :
———————————————————————— :

**<u>OPINION</u>**

[The plaintiff's motion for judgment on the agency record is denied.]

Dated: December 22, 2010

<u>Riggle & Craven</u> (<u>David A. Riggle</u>, <u>Lei Wang</u>, and <u>Shitao Zhu</u>) for the plaintiff.

<u>Tony West</u>, Assistant Attorney General; <u>Jeanne E. Davidson</u>, Director, <u>Patricia M. McCarthy</u>, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (<u>Michael D. Panzera</u>), for the defendant.

<u>Wiley Rein, LLP</u> (<u>Alan H. Price</u>, <u>Timothy C. Brightbill</u>, and <u>Maureen E. Thorson</u>) for the intervenor-defendant.

Restani, Judge: This action—brought before the court on plaintiffs The Watanabe

Group's ("Watanabe" or "Petitioner")[1] motion for judgment on the agency record pursuant to

---

[1] Watanabe Group consists of Watanabe Paper Products (Shanghai) Co., Ltd., Watanabe

(continued...)

USCIT R. 56.2—challenges the Department of Commerce's ("Commerce") final determination

in a periodic review of an antidumping ("AD") duty order on certain lined paper products from

the People's Republic of China ("PRC").  Certain Lined Paper Products From the People's

Republic of China: Notice of Final Results of the Second Administrative Review of the

Antidumping Duty Order, 74 Fed. Reg. 63,387, 63,389 (Dep't Commerce Dec. 3, 2009) ("Final

Results").  For the reasons stated below, the court affirms Commerce's final results and denies

Watanabe's motion for judgment on the agency record.

## BACKGROUND

In September 2006, Commerce published its less than fair value ("LTFV")

determination resulting in an AD duty order.  Notice of Amended Final Determination of Sales

at Less Than Fair Value: Certain Lined Paper Products from the People's Republic of China;

Notice of Antidumping Duty Orders: Certain Lined Paper Products from India, Indonesia and the

People's Republic of China; and Notice of Countervailing Duty Orders: Certain Lined Paper

Products from India and Indonesia, 71 Fed. Reg. 56,949, 56,949 (Dep't Commerce Sept. 28,

2006) ("LTFV Determination").  In September 2008, Commerce initiated the second

administrative review of that order at the request of the American Association of School Paper

Suppliers to examine entries of lined paper products from the PRC produced or exported by

another entity (which was later dropped) and Watanabe for the period of review ("POR") from

September 1, 2007 through August 31, 2008.  Initiation of Antidumping and Countervailing

---

[1](...continued)
Paper Products (Linqing) Co., Ltd., and Hotrock Stationary (Shenzen) Co., Ltd.  Mem. in Supp.
of Mot. for J. on the Agency R. Submitted by Pl. The Watanabe Group, Pursuant to Rule 56.2 of
the Rules of the U.S. Court of International Trade ("Pl.'s Br.") 1.

<u>Duty Administrative Reviews and Deferral of Administrative Review</u>, 73 Fed. Reg. 64,305,

64,306 (Dep't Commerce Oct. 29, 2008).

   Commerce asked Watanabe to respond to Sections A, C, and D of Commerce's

AD questionnaire.  App. to the Resp. Br. of Association of American School Paper Suppliers

("AASPS's App.") Tab 4.  Watanabe responded that it had not exported merchandise during the

POR.  <u>See</u> <u>id.</u> Tab 5.  Commerce informed Watanabe that subject merchandise produced or

exported by Watanabe had entered the U.S. market during the POR.  <u>See</u> <u>id.</u> Tab 6, at 1.

Watanabe replied that all shipments but one were non-subject merchandise and the remaining

shipment was shipped just prior to the POR.[2]  <u>See</u> <u>id.</u> Tab 7.  Commerce countered that the

subject merchandise entered the United States during the POR.  <u>See</u> <u>id.</u> Tab 8.  Watanabe argued

that the date of entry was irrelevant.  <u>See</u> <u>id.</u> Tab 9, at 2–3.  Commerce clarified that it evaluates

subject merchandise based on entry, not sale.  <u>See</u> <u>id.</u> Tab 10.  Watanabe answered three

questions put to it by Commerce by stating that the date of sale was prior to the POR, no subject

merchandise was sold during the POR, it had no reviewable sales, and all other questions by

Commerce were inapplicable.  <u>See</u> <u>id.</u> Tab. 11.  Commerce again clarified that the sales to be

reviewed for the POR were identified by entry date and granted Watanabe's request for an

extension.  <u>See</u> <u>id.</u> Tab 12; Tab 13.  In May 2009, Watanabe informed Commerce that it would

not respond.  <u>See</u> <u>id.</u> Tab 14; Tab 15.

   Commerce published its preliminary results, finding Watanabe to be part of the

---

[2] The parties agree that the merchandise was shipped before September 1, 2007, but dispute the exact date.  Any discrepancy is immaterial because, as will be discussed, the date upon which the merchandise was shipped is irrelevant.

PRC-wide entity based on its failure to respond to Commerce's questionnaire or to submit a

certification of data supporting a rate separate from that of the PRC-wide entity.  Certain Lined

Paper Products From the People's Republic of China: Notice of Preliminary Results of the

Antidumping Duty Administrative Review, 74 Fed. Reg. 36,662, 36,663 (Dep't Commerce July

24, 2009.  In November 2009, Commerce published its Final Results, continuing to find that

Watanabe had sold goods immediately prior to the POR but that those goods had entered the

U.S. market during the POR, that Watanabe had failed to respond to Commerce's questions and

was therefore deemed part of the PRC-wide entity, and that adverse inferences were warranted

with respect to selection of an AD duty rate.  Final Results, 74 Fed. Reg. at 63,389–90; Issues

and Decisions for the Final Results of the Second Amin. Review of the Antidumping Duty Order

on Certain Line Paper Products from the People's Republic of China (Final Results), A-570-901,

POR 09/01/2007-08/31/2008, at 4, 13–15 (Nov. 23, 2009) ("Iss. & Dec. Memo."), available at

http://ia.ita.doc.gov/frn/summary/PRC/E9-28769-1.pdf (last visited Dec. 21, 2010).  Commerce

assigned a rate of 258.21% to the PRC-wide entity and to Watanabe.  Iss. & Dec. Memo. at 15.

In July 2010, Watanabe moved for judgment on the agency record.

## JURISDICTION & STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c).  The court will uphold

Commerce's final results in dumping reviews unless they are "unsupported by substantial

evidence on the record, or otherwise not in accordance with law."  19 U.S.C.

§ 1516a(b)(1)(B)(i).

## DISCUSSION

### I.      Subject Merchandise Is Reviewed by Entry

Watanabe contends that Commerce, absent a sale, must rescind the administrative review because 1) the regulation prevents Commerce from using the date of entry to select sales to be reviewed, and 2) Commerce double-counted.  Pl.'s Br. 10.  This claim lacks merit.

First, Watanabe claims that Commerce's regulation does not permit Commerce to consider transactions for merchandise sold prior to the POR but which entered the United States during the POR.  Pl.'s Br. 10.  The regulation provides that Commerce "may rescind an administrative review . . . if the Secretary concludes that, during the period covered by the review, there were no entries, exports, or sales of the subject merchandise."[3]  19 C.F.R. § 351.213(d)(3).  Additionally, Commerce reviews "entries, exports, or sales during the" POR. 19 C.F.R. § 351.213(e)(1)(ii).  Watanabe misreads the regulation and this Court's precedent. Helmerich & Payne, Inc. v. United States, 24 F. Supp. 2d 304, 312–14 (CIT 1988) (finding Commerce's examination of subject merchandise based on entry date valid, regardless of date of sale); Corus Staal BV v. United States, 387 F. Supp. 2d 1291, 1303 (CIT 2005) (affirming that Commerce's "entry-based methodology" is consistent with its practice and in accordance with law).  Here, the commercial invoice shows that the subject merchandise was exported just before the POR began and plaintiff does not dispute that entry occurred during the POR.  Because the regulation offers three alternatives for selection of sales—entry, export, or sale—Commerce has

---

[3] The statutory basis for the regulation also mentions entries.  In determining AD duties, "the administering authority shall determine -- (i) the normal value and export price (or constructed export price) of each entry of the subject merchandise, and (ii) the dumping margin for each such entry."  19 U.S.C. § 1675(a)(2)(A).

the discretion to choose entries, exports, or sales in determining whether sales activity occurred during the POR.[4]  See 19 C.F.R. § 351.213(d)(3).

Second, Watanabe claims that Commerce double-counted the transaction in question, by examining it in this administrative review and the prior review.  Pl.'s Br. 14.  Commerce conducts its reviews, including the prior review, on the basis of entry.  Iss. & Dec. Memo. at 6; see, e.g., Certain Welded Carbon Steel Pipes and Tubes from Thailand: Final Results of Antidumping Duty Administrative Review, 63 Fed. Reg. 55,578, 55,589 (Dep't Commerce Oct. 16, 1998).  Additionally, Watanabe's sales were not individually examined by Commerce in the prior review because Watanabe was neither a voluntary nor a mandatory respondent in that review, although it qualified for a separate rate in the earlier review.  Iss. & Dec. Memo. at 6.  As Commerce permissibly relied on the date of entry of the subject merchandise in selecting sales for review and did not double-count any such entry, Commerce's decision in this regard is sustained.

## II.   Application of Adverse Inferences

Watanabe alleges Commerce improperly applied inferences adverse to the interests of Watanabe.  Pl.'s Br. 17.  This claim lacks merit.

Commerce may apply adverse facts available ("AFA") to a party who fails "to

---

[4] Watanabe cites Torrington Co. v. United States, 818 F. Supp. 1563, 1574 (CIT 1993) for the proposition that the statute requires some "meaningful sale" to or in the U.S. market. Pl.'s Br. 15 (quoting Torrington, 818 F. Supp. at 1574).  Unlike Torrington where the subject merchandise entered the United States without having been sold and was subsequently re-exported without sale, the subject merchandise in the instant case was sold, entered the United States, and remained there.  See Torrington, 818 F. Supp. at 1574.  Thus, Commerce was deprived of any basis upon which to calculate a dumping margin.  See id. at 1574.

cooperate by not acting to the best of its ability to comply with a request for information."  19

U.S.C. § 1677e(b).  Cooperation means a party must "do the maximum it is able to do" to

comply with the requests, Nippon Steel Corp. v. United States, 337 F.3d 1373, 1382 (Fed. Cir.

2003), if that party "would have known that the requested information was required," Fujian

Lianfu Forestry Co. v. United States, 638 F. Supp. 2d 1325, 1338 (CIT 2009).  Commerce gave

Watanabe multiple opportunities to respond to its request for data.  See AASPS's App. Tab 5;

Tab 6; Tab 8; Tab 12; Tab 14.  Commerce informed Watanabe when the shipment in question

took place, that its shipment was included in the POR, that an alternative reporting method

existed, and that failure to respond would result in an adverse inference.  Id. Tab 8; Tab 12.

Watanabe offered every excuse available: it could not comment because of confidentiality, it did

not know when or where the importer may have entered the merchandise, the shipment was not

part of the POR, and it asked for a deadline extension before informing Commerce it would not

submit a response.  See id. Tab 7; Tab 13.  Additionally, Watanabe never replied to Commerce's

questions regarding its relationship with the PRC-wide entity.  See id. Tab 11.  Its only responses

strongly implied that it possessed data on a sale from just prior to the POR that entered the

United States during the POR.  Id. Tab 7.  Because Watanabe should have known what

Commerce was seeking and did not do the maximum it could, Commerce's application of an

inference adverse to the interests of Watanabe was permissible.[5]

---

[5] Watanabe seems to argue that Commerce may not, and in the instant case did not, apply
an adverse inference prior to determining that a respondent has not fully cooperated.  Pl.'s Br.
17–20.  This is contrary to the plain facts of the case: Prior to applying an adverse inference,
Commerce found that "Watanabe failed to provide requested information" and that "[i]t is clear
on the record of this case that Watanabe failed to cooperate to the best of its ability in this

(continued...)

Having received no information from Watanabe aside from its denial of shipments during the POR, Commerce applied adverse inferences in determining that Watanabe was part of the PRC-wide entity and selecting an AD duty rate.  Iss. & Dec. Memo. at 13. Absent any information on the record, Commerce presumed that this non-compliant respondent was part of the PRC-wide entity.  See Shanghai Taoen Int'l Trading Co. v United States, 360 F. Supp. 2d 1339, 1348 (CIT 2005) (respondent has the obligation to place some evidence on the record to dispute an adverse inference).  Because the record was empty of all information regarding Watanabe's relationship with the PRC-wide entity, here Commerce permissibly chose to find the respondent to be part of the PRC-wide entity.[6]

## III.    Corroboration of the PRC-wide Rate

Watanabe claims Commerce erred in not corroborating the PRC-wide rate, 1) as to Watanabe,[7] and 2) as to the PRC-wide entity.[8]  See Pl.'s Br. 23–31.  This claim lacks merit.

---

[5](...continued)
administrative review."  Iss. & Dec. Memo. at 8, 11.

[6] Watanabe does not seem to contest Commerce's determination that it is part of the PRC-wide entity, only that Commerce made an impermissible adverse inference.  See Pl.'s Br. 17–22.  Further, Watanabe does not challenge Commerce's general methodology of requiring exporters to demonstrate entitlement to a rate separate from that of the PRC-wide entity in each period that is reviewed.

[7]  Watanabe argues that, because it received a rate of 22.35% as a separate rate respondent in a prior review, Commerce's application of 258.12% to it through the PRC-wide entity is punitive.  Pl.'s Br. 28.  First, because Watanabe submitted no evidence it is impossible to decide that something other than its prior rate is punitive as to Watanabe. Second, no party has placed evidence on the record suggesting that the PRC-wide rate is punitive as to the PRC-wide entity.  Issues and Decision Memorandum for the Less-Than-Fair Value Investigation of Certain Lined Paper Products from the People's Republic of China, A-570-901, POI 01/01/2005-06/30/2005, at 38 (Aug. 30, 2006) ("LTFV Iss. & Dec. Memo."), available at http://ia.ita.doc.gov/frn/summary/PRC/06-7538-1.pdf (last visited Dec. 21, 2010); Final Results,
(continued...)

Watanabe alleges that Commerce did not corroborate the PRC-wide rate as to

Watanabe because the rate chosen bore no rational relationship to Watanabe.  Pl.'s Br. 23–28.

Where Commerce has found the respondent part of the PRC-wide entity based on adverse

inferences, Commerce need not corroborate the PRC-wide rate with respect to information

specific to that respondent because there is "no requirement that the PRC-wide entity rate based

on AFA relate specifically to the individual company."  Peer Bearing Co.-Changshan v. United

States, 587 F. Supp. 2d 1319, 1327 (CIT 2008); Shandong Mach. Imp. & Exp. Co. v. United

States, Slip Op. 09-64, 2009 WL 2017042, at *8 (CIT June 24, 2009) (Commerce has no

obligation to corroborate the PRC-wide rate as to an individual party where that party has failed

to qualify for a separate rate).  Commerce's permissible determination that Watanabe is part of

the PRC-wide entity means that inquiring into Watanabe's separate sales behavior ceases to be

meaningful.

Watanabe argues for the application of recent Federal Circuit precedent, which

---

[7](...continued)
74 Fed. Reg. at 63,390.  Thus, the application of PRC-wide rate of 258.12% is not demonstrated
to be punitive.

[8] Watanabe states that the "Adverse Facts Available rate selected by Commerce and
applied to Watanabe (258.21%) was not supported by substantial evidence."  Pl.'s Br. 23.   As
indicated, Commerce did not apply a separate AFA rate to Watanabe, but rather applied the
PRC-wide rate through adverse inferences.  Iss. & Dec. Memo. at 13.  These are two distinct
legal concepts: a separate AFA rate applies to a respondent who has received a separate rate but
has otherwise failed to cooperate fully whereas the PRC-wide rate applies to a respondent who
has not received a separate rate.  See Since Hardware (Guangzhou) Co. v. United States, Slip
Op. 10-108, 2010 WL 3982277, at *8 (CIT Sept. 27, 2010).  This Court assumes that Watanabe
argues Commerce failed to corroborate the PRC-wide rate as to Watanabe given Watanabe's
insistence that Commerce must rely on primary information, AFA rates must bear a rational
relationship to the respondent, and AFA rates cannot be punitive.  See Pl.'s Br. 23–28.

found that "Commerce may not select unreasonably high rates having no relationship to the

respondent's actual dumping margin."  Pl.'s Br. 24 (quoting Gallant Ocean (Thai.) Co. v. United

States, 602 F.3d 1319, 1323 (Fed. Cir. 2010)).  This misreads Gallant, a separate AFA rate case,

which clearly states that an "AFA rate must be a reasonably accurate estimate of the

respondent's actual rate."  Gallant, 602 F.3d at 1323 (internal quotation marks omitted)

(emphasis added).  If a respondent receives an AFA rate separate from that of the PRC-wide

entity, that respondent has presented a separate rate certification to Commerce and has

established its separate identity.[9]  Since Hardware, 2010 WL 3982277, at *8 (finding that "[i]f

the record supports application of a separate rate, Commerce must determine a separate AFA rate

. . . ; if not, Commerce may apply the PRC-wide rate").  Here, Gallant does not apply in the

manner asserted by Watanabe because Commerce has determined Watanabe to be part of the

PRC-wide entity and therefore Watanabe has not received a separate AFA rate.[10]

       Watanabe also alleges that Commerce failed to corroborate the PRC-wide rate

generally.  Pl.'s Br. 28–30.  Having intentionally left the record for this administrative review

void of any evidence, Watanabe now asks this Court to require Commerce to corroborate the

---

[9] An alternative way of viewing this relationship is that it is the PRC-wide entity that initially receives the AFA rate for its failure to respond and where a respondent has been determined to be part of the PRC-wide entity the individual respondent receives that rate either because it accepts that such a rate applies or it does not successfully establish its separateness. Therefore, the underlying principle of Gallant applies insofar as it requires the AFA rate to be a reasonably accurate estimate of the PRC-wide entity's actual rate.

[10] Watanabe's reliance on other AFA rate cases is similarly misplaced as an adverse factual inference does not necessarily mean the receipt of a separate AFA rate.  See, e.g., Timken Co. v. United States, 354 F.3d 1334 (Fed. Cir. 2004); F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027 (Fed. Cir. 2000); Shandong Huarong Gen. Grp. Corp. v. United States, 31 CIT 42 (2007).

PRC-wide rate.  Corroboration requires the use of independent sources to confirm the validity of secondary information.  19 U.S.C. § 1677e(c).  Here, Commerce selected the highest rate from an earlier segment of the proceeding: the petition rate corroborated in the LTFV Determination. See Final Results, 74 Fed. Reg. at 63,390; LTFV Iss. & Dec. Memo. at 38.  Neither Watanabe nor any other party has placed any evidence on the record calling into doubt the petition rate or Commerce's corroboration.  Final Results, 74 Fed. Reg. at 63,390.  With no evidence specific to this review and no evidence questioning the prior corroboration of the PRC-wide rate, Commerce may rely on the corroborated rate from an earlier segment of the proceeding because doing so is based on a reasonable inference from the current record. See Ocean Harvest Wholesale, Inc. v. United States, 26 CIT 358, 370 n.21 (2002) (permitting Commerce to use a petition rate corroborated in the investigation where no new evidence discredits that rate); Peer Bearing, 587 F. Supp. 2d at 1328 ("the reliability of [the corroborated rate] stems from its basis in prior verified information in previous administrative reviews"); cf. Rhone Poulenc, Inc. v. United States, 899 F.2d 1185, 1190–91 (Fed. Cir. 1990) (permitting Commerce to make a presumption where the respondent has failed to place any evidence on the record).

    Commerce correctly assigned the PRC-wide rate to Watanabe because Commerce was not in a position to corroborate that rate with information specific to Watanabe and there is nothing to demonstrate that Commerce did not sufficiently corroborate the rate as to the PRC-wide entity in an earlier proceeding.  Thus, Commerce's decision is affirmed.

**CONCLUSION**

For all the foregoing reasons, the court sustains Commerce's final results.

Plaintiff's motion for judgment on the agency record is denied.

          /s/ Jane A. Restani          
Jane A. Restani
Judge

Dated: This 22nd day of December, 2010.
New York, New York.

## UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                                        :
THE WATANABE GROUP,                                     :
                                                        :
                          Plaintiff                     :
                                                        :
                    v.                                  :          Before: Jane A. Restani, Judge
                                                        :
UNITED STATES,                                          :          Court No. 09-00520
                                                        :
                          Defendant,                    :
                                                        :
                    and                                 :
                                                        :
ASSOCIATION OF AMERICAN                                 :
SCHOOL PAPER SUPPLIERS,                                 :
                                                        :
                    Intervenor-Defendant.               :
_____ :

## <u>JUDGMENT</u>

The determination of the United States Department of Commerce in this action is

hereby sustained.



                                      ____/s/ Jane A. Restani_____
                                           Jane A. Restani
                                                Judge

Dated: This 22nd day of December, 2010.
         New York, New York.